IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

MARLIN VANN MARTIN ROGERS                                               PLAINTIFF
#662205

V.                         Case No. 3:24-CV-00218-BSM-BBM

DEXTER PAYNE, Director, Supervisor,
Arkansas Department of Correction; and
MICHELLE GRAY, Warden, North
Central Unit, Arkansas Department of
Correction                                                                DEFENDANTS

## **RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Miller may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

I.        **INTRODUCTION**

On November 18, 2024, Marlin Vann Martin Rogers ("Rogers"), an inmate in the East Arkansas Regional Unit ("EARU") of the Arkansas Division of Correction ("ADC"), filed a *pro se* Complaint alleging violations of his constitutional rights. (Doc. 2). The Court conducted an initial screening of the Complaint pursuant to the Prison Litigation Reform

Act ("PLRA")[1] and noted several deficiencies. (Doc. 4). Rogers was given leave to file an amended complaint and placed on notice that an amended pleading would supersede his previous Complaint. *Id*. at 8 (citing *In re Atlas Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)).

Rogers failed to file an amended complaint, and the time to do so has passed. (Doc. 4 at 9). Accordingly, the Court will proceed with screening his operative Complaint, (Doc. 2). 28 U.S.C. § 1915A(a).

## II. ALLEGATIONS

In his Complaint, Rogers generally alleges that Defendant ADC Director Dexter Payne ("Director Payne") has appointed staff that violate Rogers's rights, and Defendant North Central Unit Warden Michelle Gray ("Warden Gray") was aware of an attack on Rogers at the North Central Unit; instead of receiving his requested protective custody after the attack, Rogers was transferred to the EARU, where he was attacked again. (Doc. 2 at 1).

More specifically, Rogers claims in a January 1, 2024 grievance attached to his Complaint that he was attacked at the North Central Unit on December 20, 2023, due to security being "unaware and unresponsive" to physical violence in the barracks that day.[2]

---

[1] The PLRA requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). When making this determination, the Court must accept the truth of the factual allegations contained in the complaint, and it may consider the documents attached to the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

[2] Elsewhere in his Complaint, Rogers alleges that security was unaware and unresponsive due to a failure to train and supervise. (Doc. 2 at 5).

(Doc. 2 at 7). In the same grievance, Rogers asserts that Warden Gray and the administration at the North Central Unit "fail to prioritize the security of inmates." *Id.* Warden Gray responded to the grievance and told Rogers: "I find that you failed to immediately report this incident to security. I find no evidence to support your allegations that the administration fails to prioritize your safety. Therefore, I find this grievance to be without merit." *Id.* Rogers's appeal of that grievance was denied. *Id.* On an unspecified date, Rogers alleges that he informed Sarah Huckabee-Sanders about the attack, and Huckabee-Sanders "contacted Warden Gray." *Id.* at 5.

In another grievance initiated on January 8, 2024, Rogers grieved that: (1) he was the victim of hate crime and targeting from the Aryan Nation; and (2) at his protective custody hearing on January 4, 2024, Warden Gray told him there was nothing she could do. (Doc. 2 at 8). Warden Gray responded to this grievance, informing Rogers that the committee denied Rogers's request for protective custody because he did not substantiate his claims. *Id.* at 8, 9. Rogers's appeal of the January 8, 2024 grievance was denied. *Id.* at 8.

After the December 20, 2023 attack at the North Central Unit, Rogers says he was transferred to the EARU, "under [the] Warden M. Gray administration—appointed by Director Payne," where he was stabbed by another inmate in violation of his Eighth Amendment rights.[3] (Doc. 2 at 5). The attack occurred on non-party Captain Davis's shift, and Rogers alleges that non-party Chief of Security Major Rodney Brown ("Major

---

[3] Throughout this Recommendation, any capitalization, spelling, or grammatical errors are corrected internally and without brackets.

3

Brown") is liable as a supervisor. *Id.* at 4–5. Rogers further alleges that: (1) Warden Gray could have prevented the second attack, but "she denied [him]," *id.* at 4; (2) "Director Payne is fully responsible for employing such misconduct," *id.*; and (3) Rogers has a "stab order" on him, *id.* at 5. Finally, Rogers asserts that he is suffering mental trauma, and he has "multiple grievances, a history, and a story to tell[.]" *Id.* at 4.

Rogers sues the Defendants in their official and individual capacities. (Doc. 2 at 2). For relief, Rogers requests $500,000, a refund for various expenses, and a meeting with the Governor and the Director of the ADC. *Id.* at 6.

### III. SCREENING

To survive pre-service screening under the PLRA, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions," a "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to plead a plausible claim. *Id*. Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). However, "[a] pro se complaint must be liberally construed," and courts "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (cleaned up; citations omitted); *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (citation omitted).

Liberally construing Rogers's Complaint, he brings failure-to-protect and supervisory corrective-inaction claims, but he fails to allege sufficient facts to support any plausible claim against the named Defendants.

### A. Failure to Protect

The Court construes an Eighth Amendment failure-to-protect claim from Rogers's allegations. "The Eighth Amendment requires prison officials to take reasonable measures to guarantee inmate safety by protecting them from attacks by other prisoners." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (cleaned up; citations omitted). However, prison officials only violate the Eighth Amendment "when they exhibit a deliberate or callous indifference to an inmate's safety." *Id.* (cleaned up; citation omitted). Thus, in order to state a plausible failure-to-protect claim, a plaintiff must allege facts showing: "[1] an objective component, [that] there was a substantial risk of harm to the inmate, and [2] a subjective component, [that] the prison official was deliberately indifferent to that risk." *Id.* (brackets in original; citation omitted).

<u>Warden Gray</u>. According to the January 1, 2024 grievance attached to Rogers's Complaint, Rogers was attacked on December 20, 2023, due to security being "unaware and unresponsive" to physical violence in the barracks that day. (Doc. 2 at 7). Warden Gray responded to the grievance and found it to be without merit. *Id.* Warden Gray also responded to a January 8, 2024 grievance regarding Rogers's attack and protective custody hearing. (Doc. 2 at 8, 9). Rogers alleges that Warden Gray's administration transferred him to the EARU instead of placing him in protective custody. *Id.* at 5. At the EARU, Rogers

was attacked again; Warden Gray could have prevented the attack, but "she denied [Rogers]." *Id.* at 4.

As the Court understands it, after his first attack at the North Central Unit, Rogers was denied protective custody but was eventually transferred to the EARU. (Doc. 2 at 4–5, 7–8). As to the first attack at the North Central Unit, there are no factual allegations supporting any assertion that Warden Gray was aware of any risk to Rogers before that attack occurred. Without these necessary facts, Rogers fails to state a failure-to-protect claim against Warden Gray regarding the December 20, 2023 attack.

Regarding the second attack, Rogers asserts that he informed Warden Gray—via the January 8, 2024 grievance—that he was being targeted by the Aryan Nation, but Warden Gray denied him protective custody, and her administration is responsible for transferring Rogers to the EARU. *Id.* at 4–5, 7. But Rogers fails to allege *when* he was transferred, *when* he was attacked a second time, and whether the second attack is related to the same targeting he experienced at the North Central Unit. Indeed, Rogers fails to allege whether or how Warden Gray was on notice of a substantial risk to Rogers's safety at the EARU—as opposed to the North Central Unit. Thus, as pleaded, Rogers also fails to state a failure-to-protect claim against Warden Gray for the second attack at a different correctional facility.

<u>Director Payne</u>. According to Rogers, Director Payne has appointed staff that violate Rogers's rights. (Doc. 2 at 4). And instead of receiving his requested protective custody after being attacked in December 2023, Rogers was transferred to the EARU. *Id.* Rogers

additionally asserts that "Director Payne is fully responsible for employing such misconduct" related to the two attacks. *Id.*

Rogers does not allege, however, how Director Payne was *personally involved* in the purported violation of his constitutional rights. He cannot maintain a claim against Payne based solely on his position as an ADC supervisor. *See Iqbal,* 556 U.S. at 676 ("Because vicarious liability is inapplicable to…§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Thus, to the extent Rogers *may* seek to name Director Payne in his individual capacity, the allegations in his Complaint fail to state a claim against him.

### B.     Supervisory Corrective Inaction

To the extent Rogers seeks to sue Warden Gray and Director Payne in their supervisory capacity, those claims also fail to state a claim for relief. "Supervisors can incur liability for cruel and unusual punishment in two ways: they can be liable for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices." *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993) (cleaned up). For a "corrective inaction" claim, supervisors must have "received notice of a pattern of unconstitutional acts committed by a subordinate." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Moreover, supervisors cannot be held "liable for 'corrective inaction' where there [is] no constitutional violation[] to correct." *Choate*, 7 F.3d at 1376; *see also Engesser v. Fo*x, 993 F.3d 626, 631 (8th Cir. 2021).

7

Warden Gray. From Rogers's Complaint and its attachments, it is clear that Warden Gray was aware of the December 20, 2023 attack on Rogers. (Doc. 2 at 4–5, 7). While Rogers's January 1, 2024 grievance mentions that security was unresponsive to multiple acts of violence on December 20, 2023, the mere mention of unresponsiveness on one day does not show that Warden Gray was on notice of a "pattern of unconstitutional acts committed by a subordinate." *Krigbaum*, 808 F.3d at 340. Thus, Rogers's Complaint fails to state a corrective-inaction claim against Warden Gray.

Director Payne. Similarly, Rogers offers no facts to support any corrective-inaction claim against Director Payne. While Rogers alleges that Director Payne is responsible for employing the people involved in the "misconduct," (Doc. 2 at 4), nothing in the Complaint suggests that Director Payne was on notice of a "pattern of unconstitutional acts committed by a subordinate." *Krigbaum*, 808 F.3d at 340. Thus, Rogers's Complaint fails to state a corrective-inaction claim against Director Payne.

C.     **Official-Capacity Claims**

Rogers also sues all Defendants in their official capacity. (Doc. 2 at 2). To plead a claim against Defendants in their official capacities, Rogers must allege facts showing that the purported constitutional violations were the result of an official ADC policy, an unofficial custom, or a failure to train. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). Liberally construing Rogers's allegations, he asserts that the December 20, 2023 attack occurred as a result of a failure to train or supervise in the North Central Unit. (Doc. 2 at 5). But he does not allege any specific deficiency in the ADC's training practices. *See Mitchell v. Saint Louis Cnty., Missouri,*___F.4th___, 2025 WL

8

3483903, at *8 (8th Cir. Dec. 4, 2025) (standard for failure-to-train claim). Moreover, official-capacity claims—like supervisory-liability claims—fail if there is no underlying constitutional violation. *Jackson v. Buckman,* 756 F.3d 1060, 1067 n.3 (8th Cir. 2014). Because Rogers has not plausibly alleged any underlying constitutional violation, his official-capacity claims necessarily fail.

## IV.   CONCLUSION

IT IS THEREFORE RECOMMENDED THAT:

1. Rogers's Complaint, (Doc. 2), be DISMISSED without prejudice for failure to state a claim upon which relief may be granted.

2. The Court RECOMMEND that the dismissal count as a "strike" for the purposes of the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

3. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 9th day of December, 2025.

_____
UNITED STATES MAGISTRATE JUDGE